A. RONALD SIRNA, JR., P.C. PROFIT SHARING PLAN and Edith Rock, etc., Plaintiffs,

v.

PRUDENTIAL SECURITIES, INC., Defendant.

Nos. 95 Civ. 8422 (LAK), 95 Civ. 9016 (LAK).

United States District Court, S.D. New York.

June 3, 1997.

---

Daniel W. Krasner, Fred Taylor Isquith, Peter C. Harrar, Robert Abrams, Wolf Haldestein Adler Freeman & Herz, L.L.P., Christopher Lovell, Lovell & Skirnick, New York City, for Plaintiffs.

A.R. Pietrzak, Judith Welcom, Madeleine J. Dowling, Vincent G. Bradley, Brown & Wood, L.L.P., New York City, for Defendant.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This purported class action complaint contends that Prudential Securities, Inc. ("PSI") was a fiduciary under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. ("ERISA"), and that it breached its fiduciary duty by failing to "sweep" unencumbered cash in the principal plaintiff's brokerage account into a money market fund as quickly as it was technologically capable of doing so, thereby depriving the plaintiff of the opportunity to earn interest and enabling PSI to benefit from the "float." A second plaintiff seeks leave to join in the second amended complaint solely to assert a state law cause of action. PSI moves to dismiss the claim of the principal plaintiff and opposes the motion of the second plaintiff for leave to join. As the Court concludes that PSI was not a fiduciary in any respect relevant to the claim asserted in this case, the action is dismissed. The motion of the second plaintiff for leave to join in the second amended complaint is denied.

### Facts

#### The Sirna Plan

The principal plaintiff in the action is the A. Ronald Sirna, Jr., P.C. Profit Sharing Plan, which is a pension plan as defined by ERISA, 29 U.S.C. § 1002 et seq. A. Ronald Sirna, Jr., who appears to be an attorney, is the trustee of the plan, and A. Ronald Sirna, Jr., P.C. is its administrator.

The Sirna plan opened a brokerage account with PSI in December 1994. At the time it did so, it declined to select a so-called "Command Account," which would have provided a daily sweep of unencumbered cash into a money market mutual fund,[1] choosing instead a "non–Command Account," which provided less frequent sweeps. It selected Prudential Securities MoneyMart Assets Inc., doing business as Prudential MoneyMart Assets ("MoneyMart"), as the money market mutual fund for the sweep of free credits from the account.

The sweep procedure that PSI employed throughout the duration of the Sirna plan's account was disclosed fully and accurately in the MoneyMart prospectus. Briefly stated, it provided that PSI would make automatic sweeps of free credit balances of $1,000 or more from the brokerage account to the

---

**1.** It appears that a Command Account was available only with a minimum balance which varied during the relevant period in the range $10,000 to $15,000. The Sirna plan account had a balance in excess of $100,000 virtually throughout its existence. (Pietrzak Reply Aff. Ex. A).

MoneyMart account of proceeds from securities transactions on the business day following settlement and of all other eligible balances twice each month. The Sirna plan remained free at all times to invest as it saw fit any free credit balances remaining unswept in its brokerage account.

*Edith Rock*

Plaintiff Edith Rock allegedly is a participant in an individual retirement account managed by PSI. She seeks to assert a common law breach of fiduciary duty claim under the law of New York on the same theory as the Sirna plan.

*Prior Proceedings*

The complaint now before the Court represents plaintiffs' sixth attempt to state a legally sufficient claim. The Sirna plan and Rock originally brought separate actions as did a third plaintiff. After the three cases all were assigned to the undersigned, the Court directed the filing of a consolidated amended complaint. On February 7, 1997, the Court granted defendant's motion to dismiss the consolidated amended complaint. *Sirna v. Prudential Securities, Inc.*, Nos. 95 Civ. 8422(LAK), 95 Civ. 9016(LAK), 96 Civ. 4534(LAK), 1997 WL 53194 (S.D.N.Y. Feb. 7, 1997). The Court, however, granted the Sirna plan alone leave to amend in an effort to allege facts showing that PSI was a fiduciary within the meaning of ERISA.

*Discussion*

*The Sirna Plan*

■ The Sirna plan contends that PSI was a fiduciary within the meaning of ERISA and that it breached its fiduciary duty by failing to sweep funds from its brokerage to its MoneyMart account as frequently as technology permitted it to do so. (Sec. Am. Cpt. ¶¶ 19, 28–30).

ERISA provides in relevant part that:

"[A] person is a fiduciary with respect to a plan to the extent (*I*) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets …" 29 U.S.C. § 1002(21)(A).

The Sirna plan contends that PSI was a fiduciary for two reasons. First, it unilaterally fixed the sweep policy that it offered to its customers and retained the right to alter that policy after an account was opened. Thus, plaintiff argues, the frequency with which PSI swept free credit balances from its account was subject to its discretion. It contends also that PSI was a fiduciary because the MoneyMart fund into which the free credit balances were swept was an investment fund, the investment of the assets of which was made in PSI's discretion. (Sec. Am. Cpt. ¶¶ 17–18) These arguments are deeply flawed.

To begin with, the assertion that PSI was a fiduciary with respect to the sweep policy because it managed the money market fund into which free credit balances were swept is quite wide of the mark. The investment adviser of MoneyMart was not PSI at all, but Prudential–Bache MoneyMart Assets, Inc. Moreover, it would make no difference if PSI were the investment adviser. Section 3(21)(B) of ERISA, 29 U.S.C. § 1002(21)(B), specifically provides that the investment of pension plan funds in securities issued by a registered investment company (such as MoneyMart) does not of itself cause the investment company, its adviser or its underwriter to be deemed a fiduciary. Moreover, as plaintiff itself takes pains to point out, "a person may be an ERISA fiduciary with respect to certain matters but not others." (Pl. Mem. 13 quoting *F H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1259 (2d Cir.1987)). Even assuming, contrary to statute, that PSI, as manager of MoneyMart, became an ERISA fiduciary with respect to its management of the money market fund to the extent it accepted assets from ERISA plans, there would be no basis for concluding that it thereby became a fiduciary with respect to the sweep terms that it offered to prospective customers on PSI brokerage accounts.

The Sirna plan's other contention is no more meritorious. In order to become a fiduciary with respect to a qualified ERISA plan, one must exercise discretionary authority regarding the management of the plan or exercise authority or control regarding its

management or the disposition of its assets. 29 U.S.C. § 1002(21)(A). There is no suggestion in this complaint that PSI exercised discretionary authority or control over the management of the Sirna plan. The contention is merely that in deciding the sweep terms it would offer to the Sirna plan, which the Sirna plan alone decided whether to accept, and later in failing unilaterally to alter those agreed terms in the Sirna plan's favor, it exercised discretionary control regarding the disposition of plan assets. With all due respect, the Court is convinced that this is not what Congress had in mind.

*F.H. Krear & Co.*, 810 F.2d 1250, is especially pertinent. The Second Circuit there held that a firm that offered administrative services to employee benefit plans, at the point it first concluded an arrangement with the plans in question, was not a fiduciary:

> "When a person who has no relationship to an ERISA plan is negotiating a contract with that plan, he has no authority over or responsibility to the plan and presumably is unable to exercise any control over the trustees' decision whether or not, and on what terms, to enter into an agreement with him. Such a person is not an ERISA fiduciary with respect to the terms of the agreement or his compensation." 810 F.2d at 1259.

*F.H. Krear* is dispositive to the extent that the Sirna plan contends that PSI was a fiduciary, and therefore obligated to offer the highest sweep frequency of which it was capable technologically, at the point the plan opened its account. At that point, the plan and PSI were strangers. PSI had no control over the plan or its assets. The plan trustee simply made his own decision to accept or reject PSI's offer. In those circumstances, PSI was not a fiduciary.

■ The Sirna plan claims also that PSI's failure unilaterally to amend its contract with the plan to provide for more frequent sweeps once the account was opened also violated its supposed fiduciary duty. The Court acknowledges that *F.H. Krear* allowed for the possibility that even an administrative service provider might become an ERISA fiduciary after entering into a contract at arm's length. But the condition in which it indicat-

ed that might occur is instructive. The Circuit referred to a circumstance in which the agreement between the plan and the service provider gave the latter so much control over factors determinative of its own compensation that it would make the provider a fiduciary with respect to its compensation. *Id.* The touchstone was a transfer of control over the plan or its assets from the plan to the provider which would enable the provider to manipulate the plan or its assets to its own benefit. As the hallmark of a fiduciary relationship is the entrusting of control of the property to another for the benefit of the *cestui que trust* and the hallmark of its breach the abuse of that control to the profit of the fiduciary or the detriment of the beneficiary, *F.H. Krear* fits comfortably within the mainstream of the law of fiduciary relations.

This case is quite different. Here the parties entered into an arm's length contract by which the Sirna plan agreed to a sweep schedule. The complaint is not that PSI took advantage of any control over the Sirna plan, only that it did not volunteer to alter its bargain to the plan's benefit. That is quite another matter. There is nothing in the statute or in the equitable principles upon which the fiduciary provisions of ERISA are based that suggests that one who makes an arm's length arrangement with a qualified plan thereafter becomes a fiduciary by virtue of the fact that he or she thereafter has the unilateral right to confer benefits on the plan which were not required by the terms of the bargain. *See, e.g., Schulist v. Blue Cross of Iowa*, 717 F.2d 1127, 1131–32 (7th Cir.1983) (health insurer did not become fiduciary by fixing premiums it proposed to charge to employee benefit plan because it "entered into an arm's length bargain presumably governed by competition in the marketplace").

This view draws support from the Supreme Court's recent decision in *Lockheed Corp. v. Spink*, —— U.S. ——, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996). The plaintiffs there contended that Lockheed Corporation and its directors, which had established a retirement plan, breached fiduciary obligations when they amended the plan to establish an early retirement plan. In rejecting that claim, the

Court held that employers and their directors are not fiduciaries when they adopt, modify or terminate pension plans. *Id.* at ——, 116 S.Ct. at 1789. The Court based its conclusion on the analogy between plan sponsors and settlors of trusts, *id.*, thus adverting to the fact that both sponsors and settlors, while no doubt advantaging the beneficiaries, are simply conferring a benefit; they are not using powers entrusted to them to act in the place and for the benefit of the objects of their endeavors. So too here. PSI made an arm's length bargain with the plan concerning the manner in which it would handle certain assets. There is no suggestion that it did not adhere scrupulously to the bargain. In failing to modify its contractual obligation to its own disadvantage, its actions were no different in principle from a plan sponsor deciding what level of benefits it would include in a pension plan or the settlor of a trust deciding how much to place in a trust for the benefit of another.

Plaintiff places principal reliance on *Chicago Board Options Exchange v. Connecticut General Life Insurance Co.*, 713 F.2d 254 (7th Cir.1983). There a plan sponsor purchased an annuity contract from an insurance company to fund benefits provided under its pension plan. The portion of the annuity contract relevant here permitted some withdrawal of contributions, but reduced the amounts of permitted withdrawals by sums previously withdrawn or transferred from the account. The insurer then unilaterally modified the contract to provide for the annual transfer of 10 percent of the amount in the account to a new account created by the modification. The practical effect of the change in the annuity contract was to eliminate the previous right to withdraw contributions and to lock participants into the annuity contract for a period of ten years.

The Seventh Circuit held on these facts that the insurance company was an ERISA fiduciary. It reasoned that the effect of the insurer's reservation of the right to amend the annuity contract potentially gave it the power to control disposition of plan assets, thus rendering it a fiduciary is so doing. It said that the insurer's action "had effectively determined what type of investment the Plan

must make" and that it was bound to act in accordance with fiduciary standards "[i]n exercising this control over an asset of the Plan ..." *Id.* at 260. It was careful to note, moreover, that while the insurer's power to amend rendered it a fiduciary when it exercised that power, "this status only governs actions taken in regard to amending the contract and does not impose fiduciary obligations ... when taking other actions." *Id.* at 259.

*CBOE* is inapposite here. In that case, the insurer exercised a power conferred upon it by the plan to control the manner in which plan assets were invested. Here, on the other hand, PSI did no more than offer the Sirna plan a choice of accounts offering different sweep provisions from which the plan made its own choice. Moreover, in failing to modify its sweep frequency to the advantage of the Sirna plan, PSI did not exercise any control over plan assets. Quite the contrary. The plan remained free to invest any free credit balances in its account in whatever manner it chose. Hence, PSI did not exercise control or discretion over the investment of plan assets.

This analysis of *CBOE* is fully supported by subsequent cases that have considered the circumstances in which the exercise of a power to amend a contract with an ERISA qualified employee benefit plan renders the party exercising that power a fiduciary. In *Harris Trust and Savings Bank v. John Hancock Mutual Life Insurance Co.*, 970 F.2d 1138, 1146 (2d Cir.1992), *aff'd*, 510 U.S. 86, 114 S.Ct. 517, 126 L.Ed.2d 524 (1993), the Second Circuit distinguished *CBOE* on the ground that the insurer in that case had exercised a right to alter the contract "resulting in prejudice to the contractholder." Judge Conner of this Court did much the same thing in *State Street Bank & Trust Co. v. Mutual Life Insurance Co. of New York*, 811 F.Supp. 915 (S.D.N.Y.1993), where he correctly pointed out that "in cases where a court has based an ERISA fiduciary duty on the power to alter an investment contract, the relevant contract allowed the contract seller, on its sole initiative, to alter the contract *in a manner which would lessen its value to the plan.*" *Id.* at 922 (emphasis added) (citing

*Associates in Adolescent Psychiatry v. Home Life Ins. Co.*, 941 F.2d 561, 564 (7th Cir. 1991), *cert. denied*, 502 U.S. 1099, 112 S.Ct. 1182, 117 L.Ed.2d 426 (1992) (contract gave insurer right to alter interest rate to beneficiaries' disadvantage); *Ed Miniat, Inc. v. Globe Life Ins. Group.*, 805 F.2d 732, 737–38 (7th Cir.1986), *cert. denied*, 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987) (contract gave insurer right to increase premium and lower rate of return)).

Here, in contrast, PSI is not alleged to have exercised a power to alter the contract in a manner that disadvantaged the Sirna plan. It did nothing more than fail to alter the contract to give the Sirna plan a deal better than the one it contracted for. The complaint of the Sirna plan is insufficient.

*Edith Rock*

 Rock's federal claims previously were dismissed on the merits, and leave to amend neither was sought nor granted. She now seeks to assert, by way of joinder in the second amended complaint, a state law claim for breach of fiduciary duty.

There are procedural objections to her doing so. Insofar as Rock was concerned, the February 7 order finally disposed of her case. She has shown no sufficient basis for relief from that disposition under FED. R.CIV.P. 60(b). Moreover, the only basis of subject matter jurisdiction is a claim of supplemental jurisdiction based on the Court's power over the Sirna plan's ERISA claim. The ERISA claim having been found insufficient, there is no appropriate reason moving the Court to exercise supplemental jurisdiction over Rock's claim. But there is a more basic difficulty with her position.

The premise of Rock's position is that PSI, as a broker-dealer in securities, owed her a fiduciary duty under New York law. The premise is faulty. New York courts repeatedly have held that "a broker does not, in the ordinary course of business, owe a fiduciary duty to a purchaser of securities." *Fekety v. Gruntal & Co.*, 191 A.D.2d 370, 595 N.Y.S.2d 190, 190–91 (1st Dept.1993); *accord, e.g., Feinman v. Dean Witter Reynolds, Inc.*, Index Nos. 95/123358, 95/124988, slip op. at 3 (Sup.Ct.N.Y.Co. Feb. 21, 1997).

*Conclusion*

The second amended complaint is dismissed in all respects. The ERISA claim asserted by the Sirna plan is dismissed on the merits, while its state law claims are dismissed for lack of subject matter jurisdiction, as the Court declines to exercise supplemental jurisdiction in light of the dismissal of the federal claim. Rock's motion for leave to join in the second amended complaint to assert a state law claim for breach of fiduciary duty is denied on the alternative grounds that Rock has shown no basis for relief from the prior dismissal, the Court lacks subject matter jurisdiction, declines to exercise supplemental jurisdiction, and the proposed claim is insufficient as a matter of law because the defendant did not owe Rock a fiduciary duty as a matter of state law. This order closes these cases.

SO ORDERED.